· No. 2,268.

JOS. D ELLIS, RESPONDENT, *v.* ANDREW CRAWFORD, APPELLANT.

CONSTRUCTIVE CONTRACT.—In an action growing out of an agreement made by letters to and from the respective parties residing at a distance from each other, it is the duty of the Court to construe those letters and determine whether they constitute a contract.

IDEM—PRACTICE.—In such a case it is the province of the jury to determine whether the letters were written and received by the respective parties, and the terms of the contract therein contained complied with, and of the Court to determine the construction and legal effect of such contract.

IDEM.—Third parties may show that the respective parties to the contract are interested in the subject-matter thereof in a different manner, capacity or extent than is indicated by the face of the contract, and may prove who are the real principals in the transactions to which it relates, and their respective liabilities.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

This action was brought by the plaintiff, Joseph D. Ellis, to recover from the defendant certain sums of money for work and labor done and for services rendered by plaintiff in and about the caulking, painting and finishing two schooners, the "Stag Hound" and "Louisa Morrison," for defendant, at Coos Bay, in the State of Oregon, during the year 1868; and also as assignee of certain claims of other parties, for other work, labor and services done and performed in and about the construction of said schooners, about the same time, amounting in the aggregate to the sum of twenty-seven hundred and sixteen dollars and fifty-three cents, and costs of suit. It appeared from the evidence that the schooners were built by John H. Howlett, and it was contended by plaintiff that in the building and construction of the same, Howlett acted as agent of Crawford, and that the cost of the construction of the schooners was properly chargeable to Crawford.

The defendants, on the other hand, claimed that the schooners were constructed under a contract between Howlett and Crawford, by the terms of which Howlett was to construct the schooners and deliver them in the City of San Francisco, for a certain sum or sums of money, to be paid to Howlett on said delivery.

(T.)

The agreement for the building of the vessels was contained in certain letters, which passed between Howlett and Crawford, and the vessels were built by Howlett, acting under the authority contained in the letters of Crawford.

During the time the vessels were building, certain moneys, provisions and materials were furnished by Crawford, to be applied and used in the construction of the same.

On the trial in the Court below, after the evidence on both sides was closed, the attorney for the defendant asked the following instructions :

*First*—That the letter of defendant to John H. Howlett, of December 2, 1867, Howlett's reply of January 8, 1868, and defendant's rejoinder of January 28th, constitute a contract for building a schooner, under which contract Crawford is not personally liable to any workman employed in the building of said schooner. It is a contract between Crawford and Howlett; no third person has anything to do with it. Under that contract it was Howlett's duty to deliver to Crawford the hull and spars of a schooner, and it was Crawford's duty to pay Howlett therefor. Until the delivery of such schooner by Howlett, the property of such schooner was in him.

*Second*—The sole province of the jury, with regard to those letters, is to determine from the evidence whether they were actually written, sent and received by the proper parties thereto, and whether the schooner *Stag Hound* was built in pursuance of the agreement therein contained. As to the meaning of the letters and the legal construction thereof, the Court is the sole arbiter.

*Third*—If the jury then believe from the evidence that those letters were written, sent and received, and acted upon by the parties thereto—that the *Stag Hound* was built in pursuance thereof—then the jury will find for the defendant with regard to all claims of plaintiff growing out of the building of the *Stag Hound;* unless they believe from the evidence that plaintiff or some or any of his assignors were employed *directly* by Crawford to work on the *Stag Hound* for *him,* Crawford; that he or they did work in pursuance of such employment, upon the sole individual credit of

Crawford—then, as to work done under such circumstances, if there was any such, they will find for plaintiff.

*Fourth*—That the letter of A. Crawford, of March 25th, 1868, to John H. Howlett, Howlett's answer thereto, of April 25th, 1868, and Crawford's reply of May 6th, A. D. 1868, constitute a contract between Crellin & Morgan and John H. Howlett, for the building of a schooner (provided you find that Crawford was authorized by Morgan & Crellin to act for them.) Under such contract Crawford had nothing to do with such schooner, except as the avowed agent of Crellin & Morgan. Under said contract, Howlett agreed to build and deliver to Crellin & Morgan the hull and spars of a schooner, for a price to be paid by them to him. Under such contract Crawford is not liable for work done on such schooner. Until the delivery of said schooner by Howlett, the property thereof was in him.

*Fifth*—Repeat Instruction Second, substituting *Louisa Morrison* for *Stag Hound.*

*Sixth*—If the jury then believe from the evidence that Crawford was authorized by Crellin & Morgan to act for them ; that those letters were written, sent, received and acted upon by the parties thereto; that the *Louisa Morrison* was built in pursuance thereof, then they will find for the defendant with regard to all claims of plaintiff, growing out of the building of the schooner *Louisa Morrison;* unless they believe from the evidence that plaintiff, or some or any of his assignors, were employed directly by Crawford to work on the *Laura Morrison* for him (Crawford); that he or they did work in pursuance of such employment, upon the sole individual credit of Crawford, then, as to work done under such circumstances, they will find for the plaintiff.

The Court refused to give either or any of said instructions so asked, to which refusal defendant excepted.

Judgment was for plaintiff, and the motion of defendant for a new trial being refused, this appeal was taken.

*E. W. McGraw*, for Appellant.

*Quint & Hardy*, for Respondent.

RHODES, C. J., delivered the opinion of the Court, TEMPLE, J., CROCKETT, J., and WALLACE, J., concurring:

The plaintiff, in order to hold the defendant responsible for the wages of himself and his assignors, for the labor performed by them on the schooners *Stag Hound* and *Louisa Morrison*, takes the position that in the construction of the schooners, Howlett was the employé and agent of the defendant; that the defendant was the principal; or, if the schooners were not built entirely on his account, that he was jointly interested with Howlett in their construction. The defendant's position is, that neither of the vessels was built by him, or on his account, either wholly or in part; that Howlett was not his agent or employé; that they were built by Howlett, on his own account, and under certain contracts, by which he agreed to build the *Stag Hound*, and deliver her to the defendant, and to build the *Louisa Morrison*, and deliver her to Morgan & Co.; and that the defendant acted as the agent of Morgan & Co. in contracting for the building of the *Louisa Morrison*, and of Howlett, in certain particulars, in the building of both schooners.

The liability of the defendant is to be ascertained by determining the true relation which he and Howlett bore to each other in the building of the schooners, except in the instances in which the defendant may have employed men to work on the schooners, without disclosing to them that he was not the principal in the work, when, of course, he became responsible for their wages. For the purpose of ascertaining the relation which they sustained towards each other, the jury were required to take into consideration all the facts and circumstances attending the construction of the schooners. They were not limited to the letters which the defendant and Howlett wrote to each other; even admitting that they contained evidence of the contracts under which the schooners were built, which would be sufficient to bind them in an action to which they were the parties. For it is apparent, we think, that they may have executed a contract which was drawn with the utmost formality and

precision, but which yet might not afford any clue to their true relation. They would be bound by the contract, but third persons might look outside of the contract, and ascertain from other evidence what their real relation was to each other, and to the subject-matter of the contract. Were this not the rule, it might be impossible to reach a secret partner or an undisclosed principal. The contract is not to be disregarded in a controversy between either of the parties to the contract and a third person, for it is *prima facie* evidence of the relation the parties to the contract bear to each other in respect to the subject-matter of the contract.

It being the province of the jury to find the capacity in which the defendant acted in the building of the schooners, and the evidence on this point being very conflicting, we cannot disturb the verdict as being contrary to the evidence. It remains, therefore, to be considered whether the Court erred in its rulings in respect to the evidence, or in giving or refusing instructions to the jury.

The letter of the defendant, of December 2, 1867, Howlett's answer, and the defendant's reply, constituted a contract for the building of the schooner *Stag Hound*. It was the duty of the Court to construe those letters, and to determine whether they constituted a contract. Their construction should not have been left to the jury. It was their province to determine whether the letters were written and received by the defendant and Howlett, respectively, and whether the schooner was built under the contract therein contained. The first, second and third instructions requested by the defendant accord with these views, and should have been given to the jury.

It was also the duty of the Court to construe the letters relating to the building of the *Louisa Morrison,* and to determine whether they constituted a contract; and it was the duty of the jury to find whether the schooner was, in fact, built in pursuance of the contract contained in those letters. The fourth, fifth and sixth instructions requested by defendant, correctly stated the law, and should have been given.

As to the instruction requested by the defendant, which was refused because it was not presented to the Court before

the commencement of the argument, in accordance with Rule 44 of that Court; without commenting on that rule, it is sufficient to say that the instruction does not correctly present the law applicable to the case. Assuming that the respective parties to those contracts were thereby bound to each other, and would not be permitted to show facts *aliunde* the contracts to establish or avoid a liability, third persons, as we have already remarked, are at liberty to show that the respective parties are interested in the subject-matter of the contract, in a different manner, capacity or extent than is indicated by the face of the contracts; and may prove who are the real principals in the transactions, to which the contracts relate.

The Court erred in admitting evidence of the extra work of the plaintiff, because there is no item for extra work in the plaintiff's bill of particulars.

The Court also erred in excluding questions, which were asked for the purpose of showing the interest of the witness in the event of the suit. The defendant was entitled to such evidence, as touching the question of the credibility of the witness.

The defendant should have been permitted to prove who received the freight for the lumber brought to San Francisco by the *Stag Hound*, for it had a tendency to prove who owned the vessel, before she was delivered to the defendant at that place.

Judgment reversed, and cause remanded for new trial.

By SPRAGUE, J.: I concur in the judgment.